**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 17, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THE LAW COMPANY, INC., a
Kansas corporation,

      Plaintiff/Counter-Defendant–
      Appellee,

v.

MOHAWK CONSTRUCTION AND
SUPPLY COMPANY, INC., a
Pennsylvania corporation,

      Defendant/Counter-Claimant–
      Appellant.

No. 08-3076

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:06-CV-01043-JTM)**

---

David E. White (Joshua C. Dickinson and Barry L. Pickens, Spencer Fane Britt &
Browne LLP; and Richard W. Saxe, Jr., Babst, Calland, Clements & Zomnir, P.C.,
with him on briefs), Babst, Calland, Clements & Zomnir, P.C., Pittsburgh,
Pennsylvania for Defendant/Counter-Claimant – Appellant.

Ron Campbell (Lyndon W. Vix with him on the briefs), Fleeson, Gooing, Coulson
& Kitch, L.L.C., Wichita, Kansas for Plaintiff/Counter-Defendant–Appellee.

---

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

The Law Company, Inc. ("Law"), a general contractor, sought a declaratory judgment that one of its subcontractors, Mohawk Construction and Supply Company, Inc. ("Mohawk"), is barred from collecting delay damages under the parties' subcontract. Mohawk counterclaimed for breach of contract. On summary judgment, the district court refused to consider two affidavits and numerous documents submitted by Mohawk and declined to address several of Mohawk's legal arguments. After excluding these submissions, the district court granted summary judgment in favor of Law.

For the reasons that follow, we conclude that the district court erred by refusing to consider discovery documents produced by Law in its initial disclosures that were printed on Law letterhead. The court also erred by categorically refusing to consider other exhibits. We leave for the district court to determine on remand which documents should be excluded under a non-categorical approach.

We further conclude that the district court committed an error of law when it discounted two affidavits submitted by Mohawk without first analyzing their admissibility under the sham affidavit rule. Lastly, we hold that the district court erred in relying on the pretrial order to exclude legal theories relevant to the

central issue in the case—whether the subcontract barred Mohawk from obtaining delay damages.

Because the district court has not yet determined what evidence is properly submitted and has not yet considered all relevant arguments, we cannot determine at this stage whether a disputed issue of material fact exists. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.

## I

### A

Law served as the general contractor for construction of a Cessna Aircraft Company C-10 Citation Service Center in Wichita, Kansas ("the Project"), and in that capacity subcontracted with Mohawk for installation of metal wall panels. Mohawk was originally scheduled to begin its work on October 9, 2003, and to complete its portion of the Project on February 9, 2004. As a result of disruptions beyond its control, Mohawk could not complete work on the Project until November 2004. Mohawk claims that it spent more than a year on a four-month job, in part because of Law's failure to properly coordinate other subcontractors on the Project.

On October 29, 2003, Mohawk notified Law that the Project was well behind schedule and Mohawk could not begin most of its work as anticipated.

Mohawk noted that "[a]ny delays will require additional compensation." According to the affidavit of Mark Cybulski, Mohawk's project manager, Law did not respond to this letter or address Mohawk's assertion that delays would have to be compensated. Yet, Law was not completely silent. Cybulski testified that Doug Kimple, the project manager for Law, told him that Mohawk would "definitely" be paid for additional costs and expenses. Law representatives informed Cybulski that another subcontractor, Steel Service Corporation, would be held accountable for all costs incurred by Mohawk as a result of Project delays. Law acknowledged to Mohawk that "we initiated the idea of expediting your work and offered and will compensate for premium costs of this. . . . I agree the [sic] will be some additional costs and we will be fair about this."

On November 17, 2004, as Mohawk's portion of the Project neared completion, Mohawk notified Law by letter that it sought a revised total of $255,753 in damages caused by delay. Law did not invoke the contractual provisions purporting to bar delay damages in response. Law did not mention these provisions until the current litigation commenced.

**B**

In the United States District Court for the District of Kansas, Law sought a declaration that Mohawk was not entitled to delay damages. This claim rests on several clauses in the parties' subcontract, which on their face appear to bar Mohawk from recovering such damages. The subcontract provides:

- 4 -

> Subcontractor specifically acknowledges that extension of time shall be Subcontractor's sole remedy for delay unless the same shall have been caused by Owner's or Contractor's intentional interference with the Subcontract Work, and then only after Subcontractor has provided timely notice to Contractor and Owner has approved such request for extension.

A separate clause states: "Subcontractor agrees to make no claims against Contractor or Owner should the Schedule not be strictly adhered to, it being understood that Contractor will endeavor to expedite completion of the Project as rapidly as possible." Yet another clause provides that "Subcontractor recognizes that revisions will be made to the Schedule and agrees to comply with such revisions without additional compensation." Mohawk's answer to Law's complaint raises several affirmative defenses, including waiver, and Mohawk counterclaimed for breach of contract. Also included in the answer is a list of damages Mohawk incurred, including additional equipment and overhead costs.

After the close of discovery, Law moved for summary judgment on both its declaratory judgment claim and Mohawk's counterclaim. Relying primarily on the above-cited provisions of the parties' subcontract, Law also argued that Mohawk could not recover because the claimed damages were actually incurred by one of Mohawk's subcontractors, Viking Erectors Corporation ("Viking").[1] To support the latter contention, Law cites to the deposition of Dominick DeSalvo, a damages expert designated by Mohawk, to the effect that "in reality, most of the

---

[1] Viking has the same ownership structure as Mohawk, a shared venture between David Kowcheck and Ray Jennings, but is a separate legal entity.

- 5 -

damages are associated with Viking." DeSalvo nevertheless acknowledged that overhead and profit were properly attributed to Mohawk.

Attached to Mohawk's summary judgment response are numerous documents Mohawk obtained through disclosures and discovery, including deposition testimony and affidavits from Cybulski and Kowcheck. Mohawk contends the "no damages for delay" provisions are unenforceable under Kansas law and had been waived by Law. Mohawk also argues the extensive delay at issue fell outside the scope of the provisions. Law replies that the Cybulski and Kowcheck affidavits partially contradicted prior deposition testimony and thus should be disregarded and that Mohawk's documentary submissions should be stricken because they were not authenticated. Before the district court ruled, Mohawk moved to file a surreply brief and affidavit from one of its attorneys indicating that all of the correspondence attached to Mohawk's opposition was provided by Law in its Rule 26 initial disclosures. The request was denied.

In its memorandum opinion and order, the district court found that "no damages for delay" provisions are generally enforceable. It refused to consider Mohawk's argument that the delay at issue falls outside the scope of the provisions because the only defenses identified in the pretrial order were waiver and estoppel. Seemingly conflating waiver and modification, the district court determined that the contractual provisions precluding oral modification barred Mohawk's waiver and estoppel defenses. The court further concluded that

- 6 -

modification was invalid without consideration and there was no genuine issue of material fact regarding modification. Finally, the district court found that most of Mohawk's alleged damages had accrued to Viking rather than Mohawk. Based on these rulings, the court granted summary judgment to Law.

In reaching its conclusions, the district court refused to consider many of the documents submitted by Mohawk because the documents were not supported by an authenticating affidavit. These documents had been provided to Mohawk by Law under Rule 26, and many of them were written on Law letterhead. Further, the district court refused to consider the Cybulski and Kowcheck affidavits because they "advance[d] factual positions different from those reflected in their depositions." <u>Law Co. v. Mohawk Constr. & Supply Co.</u>, 523 F. Supp. 2d 1276, 1283 (D. Kan. 2007). It neither explained how the affidavits differed from the earlier depositions, nor did it find that the affidavits created sham issues of fact. Several months later, by stipulation of the parties, the district court dismissed Mohawk's remaining counterclaim with prejudice and entered final judgment. Mohawk appeals.

## II

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. <u>Howard v. Waide</u>, 534 F.3d 1227, 1235 (10th Cir. 2008). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2]

At the outset, the parties dispute whether the district court erred by refusing to consider certain attachments to Mohawk's summary judgment opposition. Mohawk asks us to conclude that the district court impermissibly excluded the Cybulski and Kowcheck affidavits. Mohawk also contends that the district court impermissibly excluded self-authenticating documents produced by Law as part of its Rule 26 disclosures.[3] We are further asked to consider whether the district court erroneously ignored several of Mohawk's arguments as falling outside the scope of the pretrial order.

**A**

"[A]n affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements. In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." Franks v.

---

[2] This version of Rule 56(c) became effective on December 1, 2007—nine days before the court entered its summary judgment order. Because the revised Rule applies "insofar as just and practicable" to "all proceedings then pending," see Orders of the Supreme Court of the United States Adopting and Amending Rules, Order of April 30, 2007, ¶ 3, and the revision was "intended to be stylistic only," Fed. R. Civ. P. 56 advisory committee's notes, 2007 Amendment, we refer only to the revised version.

[3] In its opening brief, Mohawk also contested the district court's refusal to allow a surreply brief regarding the authentication of these documents, but at oral argument Mohawk clarified that it was not appealing that decision.

Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986) (citation omitted). We have described cases in which an affidavit raises but a sham issue as "unusual." Id. In determining whether an affidavit creates a sham fact issue, we consider whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001) (quotation omitted).

We review the district court's decision to exclude affidavits at the summary judgment stage for abuse of discretion. Mitchael v. Intracorp, Inc., 179 F.3d 847, 854 (10th Cir. 1999). "A district court abuses its discretion when it commits an error of law." Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1252 (10th Cir. 2006).

We explicitly require that a district court first "determine whether the conflicting affidavit is simply an attempt to create a 'sham fact issue'" before excluding it from summary judgment consideration. Durtsche v. Am. Colloid Co., 958 F.2d 1007, 1010 n.2 (10th Cir. 1992) (quoting Franks, 796 F.2d at 1237). Unlike our prior cases in which we affirmed a district court's exclusion of affidavits for inconsistency with prior testimony, see Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1016 (10th Cir. 2002); Ralston, 275 F.3d at 973; Mitchael, 179

F.3d at 854-55; <u>Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.</u>, 131

F.3d 874, 893 (10th Cir. 1997); <u>Rios v. Bigler</u>, 67 F.3d 1543, 1552 (10th Cir.

1995), the district court excluded the subject affidavits without having first

considered whether they raised a sham issue.  It did not so much as identify how

the affidavits conflicted with prior deposition testimony.  Law itself fails to

identify any such contradiction.[4]  Exclusion on this basis was an error of law

---

[4] Our preliminary review of the record regarding the waiver evidence indicates that Cybulski's deposition testimony as to the assurances he received from Law seems consistent with his affidavit.  During his deposition, Cybulski testified as follows:

A. I don't recall the discussions that we've had, but I know on more than one occasion that it was brought up to us that all of these concerns that we had about us not getting our work in a timely manner would be taken care of.
Q. Do you recall the words he used?  "Taken care of," is that your word?
A. That's my word, I guess, yeah.
Q. And –
A. I can't really quote it [at] this time.
Q. And I can appreciate that, after three years, but this is my opportunity to find out what you're going to say about what Mr. Kimple told you in regard to any claims you were proposing, and so –
A. I did not ever, at no time were we ever told that we would not get paid for our extension of the schedule.
Q. Were you ever told that you would definitely get paid?
A. Yes.
Q. And Mr. Kimple told you that you would get paid?
A. Yes.

In his affidavit, Cybulski swore:  "Doug Kimple from Law continuously assured me and other Mohawk representatives that Mohawk would be paid for any additional costs and expenses incurred at the Project due to the delays, schedule

(continued...)

- 10 -

constituting an abuse of discretion.  See Wyandotte Nation, 443 F.3d at 1252.

Because the district court has not made factual findings on this issue, we decline

to address it.  We will allow the district court to make such findings on remand.

**B**

With respect to the documentary evidence summarily rejected by the

district court, "[i]t is well settled in this circuit that we can consider only

admissible evidence in reviewing an order granting summary judgment.  While

the party opposing summary judgment need not produce evidence in a form that

would be admissible at trial, the content or substance of the evidence must be

admissible."  Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th

Cir. 1998) (quotation and ellipsis omitted).  We review a district court's refusal to

consider evidence at the summary judgment stage for abuse of discretion.  Sports

Racing Servs., Inc., 131 F.3d at 894.

We do not require an affidavit to authenticate every document submitted

for consideration at summary judgment.  Anderson v. Cramlet, 789 F.2d 840, 845

(10th Cir. 1986).  Rather, documents produced during discovery that are on the

letterhead of the opposing, producing party are authentic per se for purposes of

_____

[4](...continued)
impacts, inefficiently performed work, out-of-sequence work, and suspensions of
work," and that "Law never indicated that Mohawk would not be compensated for
the detrimental impacts being caused by [other subcontractors]."  At least as to
these portions of the deposition and affidavit, there appears to be no conflict.

We further see no apparent conflict between the Kowcheck affidavit and
the portions of his deposition in the record.

Federal Rule of Evidence 901. <u>Chavez v. Thomas & Betts Corp.</u>, 396 F.3d 1088, 1101 (10th Cir. 2005), <u>overruled on other grounds as recognized in</u> <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006); <u>Denison v. Swaco Geolograph Co.</u>, 941 F.2d 1416, 1423 (10th Cir. 1991). Accordingly, the district court abused its discretion when it refused to consider numerous letters, facsimiles, and memoranda attached to Mohawk's opposition that were printed on Law letterhead and produced by Law.

Mohawk also submitted numerous documents that were not printed on Law letterhead. These exhibits are not automatically authenticated under our <u>Denison</u> rule. <u>See</u> <u>Denison</u>, 941 F.2d at 1423; 31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 7109, at 86-87 n.36 (2000). As to these documents, Rule 56(c) and the Federal Rules of Evidence control.[5] By the text of Rule 56, affidavits are merely one form of submission that can demonstrate a genuine issue of material fact. Fed. R. Civ. P. 56(c) ("The judgment sought should be rendered <u>if the pleadings, the discovery and disclosure materials on file, and any affidavits</u> show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." (emphasis added)). Because evidence must be admissible to be considered on

---

[5] We need not address the contention that even if these documents should be considered under the Rule 56 standards they are nonetheless barred by District of Kansas Local Rule 56.1(d). If Rule 56 allows their consideration, a local rule cannot validly conflict with that determination. <u>See</u> Fed. R. Civ. P. 83(a)(1).

summary judgment, the proper inquiry here is under Federal Rule of Evidence 901: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

Rather than considering each document to determine whether it was authenticated, the district court summarily disregarded these exhibits because "no authentication by any witness [wa]s offered." Law Co., 523 F. Supp. 2d at 1282. Because no authenticating affidavit is required, Anderson, 789 F.2d at 845, the district court committed an error of law by categorically discarding these exhibits and therefore abused its discretion, see Wyandotte Nation, 443 F.3d at 1252.

Mohawk's submitted exhibits might be sufficiently authenticated taking into consideration the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," 901(b)(4), even if they do not appear on Law letterhead. On remand, the district court should consider authentication of each document individually.

**C**

In its summary judgment ruling, the district court refused to consider three alternative arguments advanced by Mohawk. Mohawk asserted that even if the "no damages for delay" provisions were valid and had not been waived or modified, the provisions did not apply to the conduct at issue because: (1) such an extreme delay was not contemplated by the parties; (2) the delay was

"unreasonable"; and (3) Law's alleged actions constituted a "fundamental breach." The district court concluded that these arguments were not encompassed within the final pretrial order and thus did not consider them.

We review a district court's interpretation of a pretrial order for abuse of discretion. Perry v. Winspur, 782 F.2d 893, 894 (10th Cir. 1986). Pretrial orders are to be "liberally construed to cover any of the legal or factual theories that might be embraced by their language. We have cautioned that a pretrial order is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality." Trujillo v. Uniroyal Corp., 608 F.2d 815, 818 (10th Cir. 1979) (quotations omitted). The primary purpose of pretrial orders is to avoid surprise. See Wilson v. Muckala, 303 F.3d 1207, 1216 (10th Cir. 2002).

Here, the final pretrial order listed the following under "Legal Issues": "Does the Subcontract language prevent Mohawk from making any delay claims against Law or any other types of claims based on adjustment to the work schedule?" We conclude the district court abused its discretion by refusing to consider Mohawk's alternative arguments when ruling on the summary judgment motion because these arguments fall within the scope of the pretrial order.

Law moved for summary judgment advancing the argument that the "no damages for delay" provisions in the parties' subcontract barred any recovery by Mohawk. There is no doubt that the validity of this argument was encompassed within the pretrial order; it was the central issue in the case. In opposing

- 14 -

summary judgment, Mohawk was entitled to challenge whether the "no damages for delay" provisions applied to bar its claim for damages. This was not a case in which Mohawk unfairly attempted to surprise Law with new factual allegations at trial or to inject a new claim or defense at the eleventh hour. Both parties and the court were fully aware that application of the "no damages for delay" provisions would be the subject of summary judgment briefing, and each of Mohawk's alternative arguments addressed that issue.[6] On remand, the district court should address Mohawk's three alternative contentions as to why these provisions may not apply.

**D**

Because the district court did not consider all of the properly submitted evidence and contentions when it found no disputed issue of material fact and because we defer to the district court to determine which of Mohawk's submitted documents were authenticated, we decline to determine whether summary judgment is appropriate. As discussed below, we also reject the district court's alternative basis for its decision. Accordingly, "we adopt the better practice of leaving the matter to the district court in the first instance." Evers v. Regents of

---

[6] If there be any surprise in this case stemming from arguments not discussed in the pretrial order, Mohawk may well have been the surprised party. Law did not identify in the pretrial order Mohawk's alleged lack of standing to sue for damages incurred by Viking even though Law relied on that defense at summary judgment. We discuss aspects of this standing issue in greater detail below. See Part III, infra.

- 15 -

Univ. of Colo., 509 F.3d 1304, 1310 (10th Cir. 2007).

**III**

We consider finally the alternative basis provided by the district court for granting summary judgment: "that most of [Mohawk's] claims are not any claims for damages to Mohawk, but an attempt to recover for damages to Viking, Mohawk's subcontractor." Law Co., 523 F. Supp. 2d at 1286. We cannot rely on this alternative basis to affirm the grant of summary judgment. Even if the court were correct, this issue would not dispose of Mohawk's claims entirely because there is evidence in the record that some of the claimed damages were incurred by Mohawk. Moreover, there may also be a disputed issue of material fact as to the existence of a valid informal agreement between Viking and Mohawk allowing Mohawk to proceed against Law for damages to Viking, depending on the district court's admissibility determinations on remand.

Mohawk sought damages for several forms of overhead and additional equipment costs, as noted in both its answer and the pretrial order. In its attachments to the opposition to summary judgment, Mohawk included several letters sent to Law regarding delay damages. An August 5, 2004 letter itemized these damages as including profit, equipment costs, and several forms of overhead. The Kowcheck affidavit provides similar support for the contention that Mohawk suffered damages in its own right. The August 5 letter and the Kowcheck affidavit, if admissible, would each create a disputed issue of material

fact as to whether Mohawk itself incurred damages. Because we allow the district court to decide in the first instance whether these documents are admissible at summary judgment, we cannot now determine whether a disputed issue of material fact exists.[7]

It is not Mohawk's contention that it entered into a written liquidation agreement with Viking to allow a pass-through claim. Instead, Mohawk argues that it informally agreed to pass a portion of its damages to Viking and that Viking has consented to Mohawk bringing this lawsuit.[8] The parties dispute whether an informal agreement without a writing is sufficient to confer standing. Standing presents a legal issue that we review de novo. Stewart v. Kempthorne, 554 F.3d 1245, 1254 (10th Cir. 2009).

Both parties cite Roof-Techs International, Inc. v. Kansas, 57 P.3d 538,

---

[7] The district court's memorandum and order is less than clear on this point. At first, it states that "most of [Mohawk's] claims are not any claims for damages to Mohawk, but an attempt to recover damages to Viking." Law Co., 523 F. Supp. 2d at 1286 (emphasis added). A few sentences later, the district court says that "the only damages sought by Mohawk are damages that were actually incurred by Viking." Id. (emphasis added).

[8] The concurrence would rule that Mohawk failed to preserve this issue below. However, Mohawk's argument on this point is adequate to preserve the issue. It argued in its summary judgment opposition that "Viking has notified Mohawk of its claims and has chosen to wait for payment from Mohawk pending a resolution of Mohawk's claim against Law." Both Law and the district court addressed Mohawk's contention as raising the issue of a pass-through claim. Under these circumstances, we conclude the issue was preserved. See United States v. Pena, 216 F.3d 1204, 1209 (10th Cir. 2000) (holding an issue was preserved when both the opposing party and the district court understood defendant to be asserting argument on point).

550-54 (Kan. Ct. App. 2002), for the proposition that Kansas law recognizes liquidation agreements and pass-through claims. Such an agreement would permit Mohawk to sue Law and pass on a portion of any recovery to Viking, allowing Viking a possible recovery despite its lack of privity with Law. But Roof-Techs requires neither a writing nor any other procedural formality to create a valid liquidation agreement. Id. Thus, the sufficiency of a liquidation agreement becomes largely a question of fact.

The concurrence "fail[s] to see anything in Mohawk's district court opposition brief that would allow a reasonable jury to find" that Mohawk had agreed to be liable to Viking to the extent of any recovery from Law on Viking's behalf. (Concurring Op. at 3.) But Kowcheck, a 50% owner of both Mohawk and Viking, averred that "Viking has notified Mohawk of its claims and has chosen to wait for payment from Mohawk pending a resolution of Mohawk's claim against Law. . . . Mohawk intends upon passing down to Viking a certain portion of any proceeds recovered from Law." Taking those statements in the light most favorable to Mohawk, Howard, 534 F.3d at 1235, this affidavit raises a disputed issue of material fact as to whether Mohawk agreed to be liable to Viking (if the Kowcheck affidavit is admissible). Accordingly, because of the evidentiary error in discarding the Kowcheck affidavit, see Part II.A., supra, summary judgment in favor of Law on this point was in error.

Law contends further that Mohawk should be estopped from recovering Viking-related damages because Mohawk represented to Law that all subcontractors had been paid in full. We disagree. Mohawk certified that "all persons or entities from whom [Mohawk] obtained labor, materials, or equipment for the Project have been paid in full and no such person or entity has any claim or lien against the Project for work performed on the Project, or labor, materials, or equipment supplied for the Project." That same certification provided:

> The signing and execution of this Certification of Payment of Outstanding Retainage Amount is not meant to affect or relinquish [Mohawk's] right to claim or recover the following:
> (a) Any and all damages incurred by [Mohawk] at the Project, regardless of whether said damages resulted from the actions or inactions of [Law], including but not limited to all damages of which [Law] has been placed on notice by [Mohawk] in its letter to [Law] dated November 17, 2004 . . . .

(Emphasis added). Based on the plain language of the certification, Mohawk cannot be said to have released any claims identified in its November 17, 2004, letter. That letter claimed $255,753 in damages—the same damages for delay figure Law cited in its declaratory judgment complaint. Accordingly, the damages claimed in the November 17 letter are the very damages at issue here, and Mohawk is not estopped from claiming them.

## IV

For the foregoing reasons, we **REVERSE** the grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.

08-3076, The Law Co. v. Mohawk Constr. and Supply Co.

**BRISCOE, J.,** Circuit Judge, concurring in part and dissenting in part.


I concur in part and dissent in part. Although I agree with much of the majority opinion, I respectfully disagree with its decision to remand for further proceedings the question of whether an informal pass-through agreement existed between Mohawk and Viking. At no point during the district court proceedings did Mohawk mention any such pass-through agreement. It is beyond too late for Mohawk to now make this claim. On remand, I would therefore limit Mohawk's claims to only damages it allegedly incurred, and would not permit Mohawk to pursue damages allegedly incurred by Viking.

What follows are the relevant portions of the district court pleadings regarding the question of whether Mohawk had any authority to recover on behalf of Viking: On April 25, 2007, the district court issued its pretrial order which outlined, in pertinent part, the parties' factual contentions and legal theories. Absent from that order was any mention by Mohawk of Viking, Viking's damages, or any agreement between Mohawk and Viking allowing Mohawk to seek damages incurred by Viking. On April 30, 2007, Law moved for summary judgment "on both its own claim for declaratory judgment and on [Mohawk's] counterclaims." App. at 83A. In the brief in support of its motion for summary judgment, Law expressly argued that Mohawk could not properly pursue damages incurred by Viking. Id. at 109A-111A. Mohawk, in a section of its opposition

brief entitled "Mohawk's Statement of Facts," conceded that "[a] portion of [its] claim against Law in this action [wa]s related to additional costs and expenses incurred by . . . Viking." Id. at 434A. Mohawk proceeded to allege, in that same "Statement of Facts" section, that (a) Viking "ha[d] no contractual privity to file a legal action against" Law, (b) Viking "ha[d] notified Mohawk of its claims and ha[d] chosen to wait for payment from Mohawk pending a resolution of Mohawk's claim against Law," and (c) "Mohawk intend[ed] upon passing down to Viking a certain portion of any proceeds recovered from Law." Id. at 435A. In the ensuing "Argument" section of its brief, Mohawk simply repeated these allegations and stopped. It cited no cases and neither mentioned nor attempted to apply to the facts it had alleged any legal principles, particularly the concept of "pass-through" agreements.

In light of Mohawk's untimely concession that some of the damages at issue had actually been incurred by Viking, as well as its paltry response to Law's legal arguments as to why it could not recover on behalf of Viking, I cannot fault the district court for granting summary judgment in favor of Law on this issue. To now reverse the district court's ruling on this issue, based upon Mohawk's newly asserted arguments and authorities, is unfair to both the district court and Law, and flies in the face of general litigation principles we normally apply. E.g., MacArthur v. San Juan County, 495 F.3d 1157, 1160-61 (10th Cir. 2007) ("[M]ere conclusory allegations with no citations to . . . any legal authority for

- 2 -

support does not constitute adequate briefing."). The majority provides no basis or rationale for now permitting Mohawk to pursue this new legal theory on remand – but rather concludes that if the legal issue is considered on the merits, issues of material fact remain.

Moreover, even if we were to ignore our general rules of procedure and overlook the serious deficiencies in Mohawk's district court opposition brief and the omission of the pass-through claim in the pretrial order, I am not persuaded that the meager facts Mohawk alleged in its district court opposition brief were sufficient to create a genuine issue of material fact under the new authority it now cites on appeal, i.e., Roof-Techs Int'l, Inc. v. State, 57 P.3d 538 (Kan. Ct. App. 2002). Under Roof-Techs, so-called "pass-through" or "liquidating" agreements have three basic elements: (1) the imposition of liability upon the subcontractor (Mohawk) for the sub-subcontractor's (Viking's) increased costs, thereby providing the subcontractor with a basis for legal action against the general contractor (Law), (2) a liquidation of liability in the amount of the subcontractor's recovery against the general contractor, and (3) a provision that provides for the "pass-through" of that recovery to the sub-subcontractor. Id. at 551. I fail to see anything in Mohawk's district court opposition brief that would allow a reasonable jury to find that the first of these elements was satisfied. Although Viking was apparently hoping to partake in any recovery made by Mohawk, there is no allegation that Mohawk agreed to be liable (even absent a

- 3 -

successful recovery from Law) for Viking's increased costs. The best evidence the majority can muster is Kowcheck's statement that Mohawk "intended" to pass down to Viking "a certain portion" of any proceeds recovered from Law. This statement does not, however, reasonably establish that Mohawk agreed to be liable to Viking for all of the damages it incurred.

In sum, I would limit our remand to encompass only Mohawk's damage claims, and exclude any consideration of Viking's alleged damages.