**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 7, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARCIA L. JACKSON,

     Plaintiff - Appellant,

v.

KANSAS CITY KANSAS PUBLIC
SCHOOLS UNIFIED SCHOOL
DISTRICT NO. 500,

     Defendant - Appellee.

No. 19-3094
(D.C. No. 2:18-CV-02046-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **O'BRIEN**, and **CARSON**, Circuit Judges.
_____

Marcia Jackson appeals from the district court's grant of summary judgment in favor of her former employer, Kansas City Kansas Public Schools Unified School District No. 500 ("USD 500"), on her harassment, retaliation, and discrimination claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I

Jackson started working for USD 500 in 2016. She alleges that in September 2016, she was routinely sexually harassed by her co-worker, Eugene Swygert, but she did not report his conduct to USD 500. Beginning in October 2016, Jackson's co-worker Keyannah Johnson bullied and threatened her. Jackson alleges she filed a complaint about Johnson's conduct with Lenora Miller, USD 500's Executive Director of Operations, but Miller took no corrective action. Jackson claims Johnson's harassment later became sexual—Johnson would rub her body against Jackson—but Jackson admits the October 2016 complaint did not address any alleged sexual misconduct by either Swygert or Johnson.

In December 2016, Swygert and Jackson had a verbal altercation. According to Jackson's affidavit about the incident, Swygert became angry, made "embarrassing comments" about Jackson's looks, called her ugly, made statements about her body parts, and made a vulgar sexual comment. This occurred on the day before the school district's winter break began. Jackson reported the incident to Miller the next day. After winter break, Miller placed Swygert on administrative leave pending further investigation into Jackson's allegations. Jackson met with Miller and filed a written sexual harassment complaint against Swygert. Jackson also expressed concerns for her safety, and Miller placed Jackson on paid administrative leave.

During Miller's investigation, she obtained written statements from four employees, including Johnson, who witnessed the December exchange between Jackson and Swygert. Johnson's statement indicated that Jackson had become upset

2

and called Swygert a "[b]astard" and "ignorant." Miller determined that both Swygert and Jackson had engaged in inappropriate conduct in violation of policies established by USD 500's Board of Education ("District Policies"), and she recommended the Board terminate their employment.

Miller then informed Jackson of her alleged violations of District Policies. Jackson denied the violations and told Miller she thought the investigation was a "witch hunt." At the close of her investigation, Miller sent Jackson a letter stating her conclusion that Jackson violated District Policies prohibiting: (1) the use of profanity or abusive language; (2) conduct that is "detrimental to [USD 500] personnel" and that could cause undue disruption of work or endanger the safety of others; and (3) conduct that constitutes workplace violence. Miller explained that employees who violate District Policies are "subject to disciplinary action, . . . including termination." She further advised Jackson that pursuant to District Policies, she would be given "an opportunity to present [her] side of the story" at a hearing, consistent with Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). Jackson initially agreed to attend a Loudermill hearing, but later refused to do so. The Board ultimately approved Miller's recommendation to terminate both Swygert and Jackson.

Jackson filed suit, alleging that USD 500 violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, by creating a sexually hostile work environment and terminating her in retaliation for reporting Johnson's sexual harassment. She also alleged USD 500 terminated her based on her age—she was 64

years old—in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). The court granted summary judgment in favor of USD 500 on all claims. Jackson timely appealed.

## II

Because Jackson is proceeding pro se, we construe her pleadings liberally, see Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003), but do not "take on the responsibility of serving as [her] attorney in constructing arguments and searching the record," Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005). Jackson contends the district court should have stricken Johnson's written witness statement describing the December 2016 incident, which was attached to the affidavit of Susan Westfahl, USD 500's custodian of records. "[I]t is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." Law Co. v. Mohawk Constr. & Supply Co., 577 F.3d 1164, 1170 (10th Cir. 2009) (quotation omitted). We review a district court's evidentiary rulings at the summary judgment stage for abuse of discretion. Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc., 131 F.3d 874, 894 (10th Cir. 1997). We will not disturb the district court's ruling unless we have a "definite and firm conviction" that the court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1016 (10th Cir. 2002) (quotation omitted).

At the district court, Jackson moved to strike Johnson's statement, arguing that USD 500 did not timely produce or properly authenticate it. The court concluded

4

USD 500 had met its duty to disclose under Fed. R. Civ. P. 26(a) because its initial disclosures sufficiently identified the statement. With respect to authentication, the court concluded that although Westfahl's affidavit failed to establish that Johnson's statement was self-authenticating under Fed. R. Evid. 902, an affidavit by Miller was sufficient to authenticate the statement under Fed. R. Evid. 901(a). As a result, the district court denied Jackson's motion to strike.

We conclude that the district court did not abuse its discretion in admitting Johnson's statement. Although USD 500's initial disclosures, parts of which Jackson filed on the record in connection with her motion to strike, did not specifically list the statement, they do list "Witness statements relating to December 20, 2016 incident." We also conclude Johnson's statement was properly authenticated. Although "[w]e do not require an affidavit to authenticate every document submitted for consideration at summary judgment," Law Co., 577 F.3d at 1170, there was an affidavit from Miller authenticating Johnson's statement. To authenticate Johnson's statement, USD 500 was required to produce evidence that the statement was what USD 500 claimed it was. See Fed. R. Evid. 901(a). "[T]he bar for authentication of evidence is not particularly high." United States v. Isabella, 918 F.3d 816, 843 (10th Cir. 2019) (quotation omitted). In assessing authenticity, we ask "whether there is a reasonable probability that the evidence has not been altered in any material aspect." Id. (quotation omitted). Miller's affidavit stated that as part of her investigation of the December 2016 incident, she obtained a statement from Johnson. And Miller certified based on her personal knowledge that a true and correct copy of Johnson's

5

statement was attached to Westfahl's affidavit. We hold the district court did not abuse its discretion in determining that Johnson's statement was admissible.[1]

Jackson also contends the district court abused its discretion when it refused to consider a statement by Shannon Rinehart because the statement did not "appear in a conforming affidavit or declaration." Jackson v. Kan. City Kan. Pub. Sch. Unified Sch. Dist. No. 500, 378 F. Supp. 3d 1016, 1029 n.8 (D. Kan. 2019). We agree. The district court did not address whether the statement was authenticated by any other means. See Law Co., 577 F.3d at 1170-71 (holding a district court may not "summarily disregard[]" or "categorically discard[]" unauthenticated exhibits, but rather must consider their "appearance, contents, substance, internal patterns, or other distinctive characteristics"). The district court should have considered whether Rinehart's statement was otherwise authenticated. But any error is harmless. The district court considered Jackson's affidavit, which included the same content as Rinehart's excluded statement.[2]

### III

Turning to Jackson's challenge to the district court's summary judgment ruling, we review the district court's grant of summary judgment de novo. See

---

[1] Jackson also argues Johnson's statement was false and unsworn. This argument goes to the statement's reliability, not its admissibility. See id. at 844.

[2] Further, Rinehart's statement was about the content of Swygert's sexually inappropriate comments to Jackson in December 2016. The district court, construing the facts in the light most favorable to Jackson, assumed for purposes of its analysis that Swygert made the inappropriate comments.

Young v. Dillon Cos., 468 F.3d 1243, 1249 (10th Cir. 2006).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view all of the facts in the light most favorable to the non-moving party and draw all reasonable inferences in her favor.  DeWitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2017).

## A

We first address Jackson's hostile work environment claim.  "To establish that a sexually hostile work environment existed, a plaintiff must prove the following elements:  (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."  Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007) (alteration and quotation omitted).  If a sexually hostile work environment claim is based on the employer's alleged negligence or recklessness in addressing a non-supervisory co-worker's harassment, the plaintiff must also prove that the employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment."  Id.

To survive summary judgment, the plaintiff has the burden of presenting evidence establishing a genuine issue of fact that her employer knew about the sexual harassment and that its response was unreasonable.  See Ford v. West, 222 F.3d 767,

7

776 (10th Cir. 2000).  A plaintiff can show actual knowledge by showing she

"reported harassment to management-level employees" and can show constructive

knowledge if "the pervasiveness of sexual harassment can properly lead to an

inference of knowledge."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 673 (10th

Cir. 1998).  To show that the employer's response was inadequate, the plaintiff must

show that it was not "reasonably calculated to end the harassment."  Id. at 676

(quotation omitted).

Jackson's hostile work environment claim is based on Swygert's September

2016 conduct, Johnson's sexually inappropriate behavior, and the sexually offensive

comments Swygert made to Jackson in December 2016.  Although Jackson reported

Johnson's bullying behavior to Miller in October 2016, she did not suggest that the

bullying was sexual.  Jackson also did not report Johnson's subsequent sexual

misconduct or Swygert's September 2016 sexually inappropriate behavior to any

management-level employee until after her December 2016 altercation with Swygert.

We thus conclude USD 500 did not have actual or constructive knowledge of

the sexual misconduct until December 2016.  The October 2016 complaint was

insufficient to give USD 500 actual knowledge of sexual harassment because Jackson

did not tell Miller the bullying was sexual.  As for constructive knowledge, Johnson

has not alleged facts sufficient to demonstrate the incidents of harassment were "so

egregious, numerous, and concentrated as to add up to a campaign of harassment"

that put USD 500 on notice of the harassment before December 2016.  Baker v.

Weyerhaeuser Co., 903 F.2d 1342, 1346 (10th Cir. 1990) (quotation omitted); see also Kramer v. Wasatch Cty. Sheriff's Office, 743 F.3d 726, 757 (10th Cir. 2014).

We also conclude that USD 500 responded reasonably to Jackson's December 2016 report of harassment. To assess the reasonableness of an employer's response, we ask "whether the remedial and preventative action was reasonably calculated to end the harassment." Adler, 144 F.3d at 676 (quotation omitted). "Plaintiff bears the burden of presenting evidence establishing a genuine issue of fact that the employer's response was unreasonable." Ford, 222 F.3d at 776. USD 500 placed Swygert on administrative leave immediately after winter break, placed Jackson on administrative leave to prevent further victimization, and ultimately fired Swygert. As a result of USD 500's remedial actions, Swygert's harassment immediately stopped. USD 500's response was thus reasonably calculated to end the harassment. See Adler, 144 F.3d at 676 ("A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation.").

**B**

Turning to the retaliation claim, because Jackson presented no direct evidence of retaliation, we analyze her claim under the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). A plaintiff carries the initial burden of establishing a prima facie case by showing: "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus

9

between her opposition and the employer's adverse action." Johnson v. Weld Cty., 594 F.3d 1202, 1215 (10th Cir. 2010) (quotation omitted). The burden then "shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). If the employer makes that showing, the burden shifts back to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." Id. (quotation omitted).

The district court assumed for purposes of the summary judgment motion that Jackson had established a prima facie case of retaliation. We do the same.[3] The court ultimately granted summary judgment because it concluded Jackson failed to show pretext. To show USD 500's proffered nondiscriminatory explanation for firing her was pretextual, Jackson must establish that the explanation is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it is] unworthy of belief." Johnson, 594 F.3d at 1211 (alteration and quotation omitted). We do not "ask whether the employer's decision was wise, fair or correct, but whether [the employer] honestly believed the legitimate,

---

[3] USD 500 challenges this assumption on appeal. We do not need to resolve this issue because we ultimately conclude the district court properly granted summary judgment based on Jackson's failure to show pretext. See Chen v. Dow Chem. Co., 580 F.3d 394, 402 (6th Cir. 2009) (court need not address prima facie case where plaintiff failed to create a genuine issue of material fact as to pretext); Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 600 (7th Cir. 2001) (same).

nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." Id. (alteration and quotation omitted).

USD 500 stated it terminated Jackson because by calling Swygert a "bastard" and "ignorant," she violated District Policies prohibiting profanity or abusive language, conduct detrimental to other personnel that could cause undue disruption or endanger others' safety, and workplace violence. Jackson argues that these reasons were pretextual because USD 500 did not follow its own termination policies. To the contrary, the district court concluded that USD 500 followed its internal policies by giving Jackson a written explanation of the reasons for her termination and offering her a Loudermill hearing. Ultimately, the district court concluded Miller's recommendation to terminate Jackson was based on a good faith belief that she had violated District Policies.

Jackson does not take issue with this determination on appeal. Instead, as we understand her argument, she contends USD 500's proffered reason for terminating her was pretextual because Miller told her she was being terminated based on her "poor work performance" and Miller should not have relied on Johnson's description of Jackson's behavior as the basis for her termination recommendation. Neither of these arguments establishes that USD 500's stated reason for firing Jackson—her violation of District Policies—was "unworthy of belief." Id. (quotation omitted). Accordingly, we conclude the district court did not err in granting summary judgment on this claim.

11

## C

Jackson raised an age discrimination claim in her complaint, but the district court held the claim was abandoned because Jackson did not include it in the pretrial order.  See Hullman v. Bd. of Trs. of Pratt Cmty. Coll., 950 F.2d 665, 667 (10th Cir. 1991) ("The pretrial order supersedes the pleadings and controls the subsequent course of litigation.").  Jackson does not dispute that the age discrimination claim was omitted from the pretrial order.  Accordingly, we conclude that Jackson abandoned her age discrimination claim.

## IV

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge