**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HARSCO CORPORATION, dba
AMERICAN WELDING & TANK,

     Defendant-Appellant and
     Cross-Appellee,

v.

SHANNON K. RENNER,

     Plaintiff-Appellee and
     Cross-Appellant.

No. 05-4201
No. 05-4216

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:03-CV-00950 PGC)**

Mark O. Morris (Peter H. Donaldson, with him on the briefs), Snell & Wilmer, LLP, Salt Lake City, Utah for Defendant-Appellant and Cross-Appellee

Russell T. Monahan (Stephen W. Cook, with him on the briefs), Cook & Associates, P.C., Salt Lake City, Utah for Plaintiff-Appellee and Cross-Appellant

_____

Before **BRISCOE**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

     A jury found that the Defendant, Harsco Corporation, violated Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et. seq, and awarded the Plaintiff, Shannon

Renner, $30,000 for pain and suffering, $30,000 for emotional distress, and $20,000 in punitive damages. The district court denied Harsco Corporation's motion for judgment as a matter of law on liability for hostile work environment sexual harassment, but vacated the punitive damages award. Harsco Corporation appeals the district court's denial of its motion for judgment as a matter of law and one evidentiary ruling. Ms. Renner cross-appeals the district court's order vacating the punitive damages award. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRM** the district court's order and ruling, and **REMAND** to the district court to determine reasonable attorney fees for the services Ms. Renner received in responding to Harsco Corporation's appeal.

## I. FACTUAL BACKGROUND

This case was close and hotly contested both as to liability and as to punitive damages. The jury reached a verdict, presumably resolving those disputed questions in favor of the plaintiff. The questions presented arise on appeal of the district court's resolution of Harsco Corporation's motion for judgment as a matter of law. In light of the jury's verdict, we must construe the evidence and inferences most favorably to the nonmoving party, and may not "weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for that of the jury." Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996). We summarize the facts and the evidence at trial in light of that standard.

Ms. Renner was employed as a final inspector at Harsco Corporation from September 20, 1999, until August 19, 2003. There was evidence presented by Renner

-2-

that in August or September 2001, Ms. Renner's once tolerable work environment dramatically changed. At least one co-worker made oinking and barking noises at her while she ordered lunch, stated that "she's so fat you would have to lift up her gut to f**k her," and repeatedly stepped on her shoes. Ms. Renner said she attempted to avoid the work areas of those perpetrating the harassment, but to no avail; the perpetrators began frequenting her work area to continue their behavior.

There was evidence that the nature of the harassment also extended to comments about Ms. Renner to Carey World, her co-worker. Ms. Renner testified that Mr. World was subjected to several comments because of his association with Ms. Renner, and she testified that she overheard one co-worker say that Mr. World was late coming to work because he had been home f**king Ms. Renner. Alvin Bailey, another co-worker, informed Mr. World that he thought Ms. Renner was a bitch and that he did not like her because he did not approve of women in the workplace.

On approximately December 15, 2001, Ms. Renner complained to the office manager, Deb Jabbs, that she was the subject of this harassment. She informed Ms. Jabbs of these incidents, and subsequently met with Ms. Jabbs and the plant manager, Robert Shirey. Ms. Renner testified that Harsco Corporation never apprised her of the results of its investigation. Ms. Renner therefore decided to speak with her direct supervisor, Jeff Bagshaw, about the harassment. Notwithstanding Mr. Bagshaw's assurance that the perpetrator was told not to enter her work area and that the harassment was "taken care of," the same type of harassment continued within one week after Ms. Renner's

-3-

complaint.

Ms. Renner testified that, within a few months after her complaint, the perpetrator would walk into her work area by walking directly by Mr. Bagshaw. Yet Mr. Bagshaw would walk away without intervening. Mr. World's testimony further revealed Mr. Bagshaw's negligible response to Ms. Renner's complaints. Mr. Bagshaw met with Mr. World to discuss the alleged harassment, but Mr. Bagshaw never asked Mr. World for the perpetrators' names, did not ask about additional harassment that Mr. World knew about or heard about, and did not ask when the harassment occurred. The conversation only lasted about three or four minutes. After this interaction, Mr. Bagshaw convened a meeting of Harsco Corporation employees to convey that he would not tolerate sexual harassment in the workplace. But the comments continued, and only three weeks had passed before Mr. World again informed Mr. Bagshaw that the comments were happening again—to which he responded that he would take care of it.

With little response from Harsco Corporation, the comments continued into the next year, 2002. At least one co-worker called Ms. Renner a "fat f**king c*nt," and two co-workers stood in the front and back of her car after work so she was unable to leave. There was testimony that the effect of the harassment was debilitating: Ms. Renner stopped going to the lunch truck, stopped going to the bathroom during break time, and experienced psychological distress.

Between December 2001, the time of the first complaint, and March 2003, Ms. Renner spoke with Mr. Bagshaw about the harassment on one occasion (though she

testified that management knew from other sources that the harassment was ongoing). In March 2003, the nature of the harassment expanded. Ms. Renner's co-workers spit tobacco on her car a few times per week at first, and then almost every day until approximately May 8, 2003, when Ms. Renner again complained to Mr. Bagshaw. Mr. Bagshaw told her that he would convene an employee meeting to address the situation, which he testified he did, but Ms. Renner later went to Ms. Jabbs' office because no one informed her about an investigation. There was testimony that Ms. Renner asked Ms. Jabbs to provide her with a written version of the verbal complaint that Ms. Renner lodged with Mr. Bagshaw. Ms. Jabbs told Ms. Renner that she was too busy. At that point Ms. Jabbs was sitting at her desk, unwrapping picture frames.

Ms. Renner met with Ms. Jabbs again on May 13 or 16 of 2003. Mr. Shirey was also present at this meeting, in which Ms. Renner complained about the spitting incidents and other harassment. Ms. Renner testified that Mr. Shirey and Ms. Jabbs made her feel stupid for going to the company again: they did not tell her anything they had done to investigate the complaint, did not ask for witnesses, and "it was like [Mr. Shirey] sat out there with his arms folded and said, 'well, what do you want me to do about it?'" As to Mr. Bailey's presence in Ms. Renner's work area, there was also testimony that Mr. Shirey indicated that Mr. Bailey was allowed to be in any area that he wanted to be in.

None of the people Ms. Renner complained to visited her work environment to investigate ongoing harassment or prevent further harassment. The harassment continued even after this meeting. A co-worker called Ms. Renner a "mother f\*\*ker" and would

bark, grin, and moan at her. Ms. Renner reported this incident to Mr. Bagshaw. The harassment still continued. Mr. Bailey, who was still frequenting her work area to perpetrate more harassment, intimidated Ms. Renner by walking beside her while she walked to her car after work. On or about May 19, 2003, a co-worker blocked her from going to the bathroom by standing in front of the bathroom door.

Ms. Renner went on a vacation during the first week of June 2003. She was subjected to more harassment upon her return. A co-worker stated that "he could still do [Ms. Renner] if [she] just pulled down [her] pants." Ms. Renner also testified that another co-worker told her that if Ms. Renner "got laid," then Ms. Renner would have a better attitude and not be as "picky" with the tanks. "And he said that when I was bent over the tanks, I was just in the right position for him," Ms. Renner testified. The grunting, barking, and moaning persisted during this time.

On approximately July 15, 2003, Ms. Renner met with Harsco Corporation's human resources director, Robert Bomlitz. Prior to the meeting, Ms. Renner was never seriously interviewed by anyone within the company, and was not aware of any investigation or disciplinary action taken by the company. After the meeting, the harassment continued in full force until the plant shut down for maintenance toward the end of July. The harassment commenced again the day after the plant re-opened, with Mr. Bailey blowing kisses at Ms. Renner while she was walking to the bathroom.

Ms. Renner again met with Ms. Jabbs, Mr. Bagshaw, and Mr. Shirey on July 31, at which time they informed Ms. Renner that they would conduct an investigation and

would interview the people she had mentioned as having pertinent information about her harassment.

Ms. Renner suffered a death in the family on August 1, 2003, so she left work until August 12. When she returned, a co-worker yelled "liar, liar" at her and made crying noises, and another co-worker made "meow" noises at her. At this point, Mr. Shirey visited Ms. Renner's work area and informed her that she could walk around the outside of the building to use the rest room in the office so she could avoid the people harassing her; yet Ms. Renner testified that this was not a viable option due to the work pace she was required to keep.

Ms. Renner testified that she quit her job after making repeated attempts to elicit Harsco Corporation's assistance to stop the harassment. Ms. Renner subsequently filed a complaint in the United States District Court for the District of Utah. During the trial, the results of which are recounted above, Ms. Renner admitted that she had not read Harsco Corporation's anti-harassment materials, even though she signed a document stating that she had, and that she has signed statements in the past without verifying that they were true. Harsco Corporation attempted to follow up on this admission at trial by introducing evidence that Ms. Renner signed a form falsely stating that the proceeds from this suit were exempt from her bankruptcy proceeding. The district court excluded that evidence.

## II. DISCUSSION

On appeal, the Defendant Harsco challenges two of the district court's rulings: (1) the denial of Harsco's motion for judgment as a matter of law; and (2) the ruling

excluding evidence of Ms. Renner's alleged fraud. The Plaintiff Renner challenges the district court's order granting Harsco Corporation's motion for judgment as a matter of law as to the punitive damages award. We will address these three rulings in turn, followed by a discussion of Ms. Renner's request for appellate attorney fees.

## A. Harsco Corporation's Motion for Judgment as a Matter of Law

This court reviews de novo a district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court. Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). We may find error in the district court's ruling only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. Vining v. Enterprise Fin. Group, Inc. 148 F.3d 1206, 1213 (10th Cir. 1998). We construe the evidence and inferences most favorably to the nonmoving party, and will refuse to weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for those of the jury. Harolds Stores, Inc., 82 F.3d at 1546. However, we must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. Baty, 172 F.3d at 1241. Accordingly, the key issue is whether there was a legally sufficient basis for the jury to subject Harsco Corporation to liability under Title VII, even after viewing the facts in the light most favorable to Ms. Renner.

Title VII prohibits an employer from "discriminat[ing] against any individual with

-8-

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This statutory provision prohibits subjecting an employee to a hostile work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986); Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1262 (10th Cir. 2005). "To establish [that] a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." Dick, 397 F.3d at 1262-63 (alteration in original).

But even if a plaintiff satisfies these elements, the plaintiff must identify one of three alternative bases for holding his or her employer liable under Title VII. The basis alleged here is that the employer was negligent or reckless. Under this theory, Ms. Renner was required to prove a fifth element of her claim: that Harsco Corporation had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 673 (10th Cir. 1998). Here, the first and second elements are not in dispute, so we focus our discussion on the third, fourth, and fifth elements.

As to the third element—that the harassment must be because of the plaintiff's sex—the critical issue in determining whether harassment is because of sex is whether members of one sex are subjected to a disadvantage to which the other sex is not. Dick,

397 F.3d at 1263 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Ms. Renner could have proved this element through at least two evidentiary routes: first, "the inference is 'easy to draw' if the harasser and the harassed employee are of opposite sexes, at least when the conduct at issue involves 'explicit or implicit proposals of sexual activity'"; and second, a plaintiff may prove that the harasser treats men and women differently in the workplace. Id. at 1263-64. It is important to remember, however, that Title VII is not "a general civility code for the American workplace." Oncale, 523 U.S. at 80. The harassment must be "because of . . . [the plaintiff's] sex." 42 U.S.C. § 2000e-2(a)(1).

The district court properly eschewed a mechanical approach to analyzing the evidence in favor of a "totality of the circumstances" test, and found that Ms. Renner submitted sufficient evidence to demonstrate that the discrimination was "because of . . . [her] sex." See Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1262 (10th Cir. 1998) (stating that the existence of harassment is to be considered in light of the record as a whole). Harsco Corporation challenges this finding by claiming that the basis for the harassment was Ms. Renner's strict quality control standards; it further avers that other male inspectors were similarly criticized. But Harsco Corporation fails to recognize both that Ms. Renner overheard some of these comments and that these comments were about Ms. Renner's alleged sexual performances with other inspectors. Harsco Corporation further contends that the animal noises, baby noises, and "liar, liar" comment were gender-neutral.

In essence, Harsco Corporation asks us to circumvent the proper "totality of the circumstances" test by conveniently stripping facts of their context, which we have affirmed to be the touchstone of our analysis. The jury heard about several gender-based comments and actions that only Ms. Renner was subjected to. Harsco Corporation has not demonstrated that no reasonable inference from the facts presented could support Ms. Renner's claim.

We now turn to the fourth element—the severity or pervasiveness requirement. Title VII's prohibition of harassment on the basis of sex forbids only behavior "so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale, 523 U.S. at 81. Put otherwise, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Id. Thus, the Supreme Court made clear that juries ought not find prohibited harassment merely based on ordinary socializing, such as intersexual flirtation. Id. Instead, the jury is to judge the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. Id. See also Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993) (stating that if the victim does not subjectively perceive the environment to be abusive, then the conduct has not altered the conditions of the victim's employment, and there is no Title VII violation). Factors to consider include the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

-11-

employee's work performance.  Harris, 510 U.S. at 23.

The defendant analyzes this element by citing cases denying Title VII relief even though the plaintiffs were purportedly subjected to egregious behavior.  See, e.g., Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257 (10th Cir. 1998); Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871 (5th Cir. 1999); Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998).  But Harsco Corporation's attempt at reasoning by analogy fails because its mechanical comparison of a few strategically selected facts is precisely the type of analysis this court has rejected.  Moreover, examination of these cases reveals that Harsco Corporation has oversimplified their findings.  Penry involved isolated incidents over a four year period, most of which did not occur because of the plaintiffs' sex; the harasser and harassed in Shepherd engaged in friendly discussion on almost a daily basis and had a friendly relationship both inside and outside of work (except for the few intervening incidents), and there was no evidence that the alleged conduct would have unreasonably interfered with a reasonable person's work environment; and the court in Quinn struck all but two of the plaintiff's allegations because they were time barred, leaving her to rely only on the evidence that she was voted "sleekest ass" in the office and that a co-worker deliberately touched her breasts with papers that he was holding in his hands.

Harsco Corporation exaggerates the severity and pervasiveness of the harassment in these cases and improperly discounts the evidence of harassment of Ms. Renner before the jury.  Ms. Renner submitted an abundance of facts to support her claim.  The

substance of her proof reveals an environment polluted with gender-specific comments and behavior that exceeded the mere flirtatiousness or baseness that has been found not to support a Title VII claim. Harsco Corporation failed to show that no reasonable inference from the facts could support Ms. Renner's claim.

Finally, Ms. Renner was required to prove that Harsco Corporation failed to reasonably respond to her harassment allegations of which it was actually or constructively aware. An employer will not be liable under Title VII if the employer was not on actual or constructive notice of the alleged harassment. Alder, 144 F.3d at 673. Actual knowledge is usually demonstrable where the plaintiff has reported harassment to management-level employees. Id. Moreover, the pervasiveness of sexual harassment can properly lead to an inference of knowledge. Id.

Harsco Corporation cites to evidence that Ms. Renner lodged formal complaints with management about workplace harassment on only two occasions, that on both of those occasions management took quick and effective corrective action, and that on both of those occasions Ms. Renner reported to management that the harassment had ceased. The company contends that, in light of this evidence, it was entitled to judgment as a matter of law. As the district court pointed out, however, "Harsco's argument . . . creates the erroneous impression that the evidence of Harsco's response to the harassment was wholly uncontroverted at trial, and this was simply not the case." Order of June 22, 2005 at 7.

Ms. Renner presented evidence to the jury that in addition to her two formal

-13-

complaints, she also made oral complaints to appropriate management officials and that her co-worker, Mr. World, informed management that the harassment had not ceased in response to corrective measures. (There was evidence that it was company policy to investigate harassment complaints made by third parties.) Ms. Renner also submitted evidence that Harsco Corporation's investigation of her first complaint was perfunctory at best and that Harsco Corporation did not respond to her oral complaints or to Mr. World's complaint that Ms. Renner was being harassed. The jury also heard evidence that one manager responded to her complaint by effectively saying, "well, what do you want me to do about it?"; that management neither asked Ms. Renner for witnesses nor observed her work area to detect harassing behavior; that management failed to prevent Mr. Bailey from continuing to invade her work area notwithstanding his repeated behavior; and that management did not even interview the alleged perpetrators. Finally, the jury was told that the management continued to brush off the complaints by stating that "these men are allowed to be anywhere they want to be and say what they want—as long as it isn't said directly to [Ms. Renner]."

For purpose of appeal, it is not our role to weigh the evidence or second-guess the jury's resolution of conflicting testimony. The company's recitation of the evidence in its favor is beside the point. The jury had ample evidence before it to conclude that Harsco Corporation had notice of the ongoing harassment of Ms. Renner and that its response was legally insufficient. We therefore find no error in the district court's denial of Harsco Corporation's motion for judgment as a matter of law on Title VII liability.

-14-

## B.  Punitive Damages

A plaintiff suing under Title VII may be awarded punitive damages if the employer engaged in discriminatory practices with malice or with reckless indifference to the plaintiff's federally protected rights.  42 U.S.C. § 1981(b)(1); McInnis v. Fairfield Communities, Inc., 458 F.3d 1129, 1136 (10th Cir. 2006).   To satisfy this standard, an employer must have acted in the face of a perceived risk that its actions would violate federal law.  McInnis, 458 F.3d at 1136.  This is a more demanding standard than that required for a finding of ordinary liability.  Moreover, in vicarious liability cases, Kolstad v. American Dental Ass'n bars an employer's liability for punitive damages if the manager's challenged actions were contrary to the employer's good-faith effort to comply with Title VII.  527 U.S. 526, 545-46 (1999).

The district court vacated the punitive damages award because "the paucity of evidence concerning the company's—as opposed to the managerial employees'—actions does not, as a matter of law, reasonably support a finding that the company is vicariously liable for punitive damages in light of Kolstad."  Order of June 22, 2005 at 11.  Thus, the district court found that Ms. Renner did not submit sufficient evidence that the company, as opposed to its managerial employees, failed to make good-faith efforts to comply with Title VII.

Ms. Renner challenges the district court's order on the ground that the Kolstad

-15-

defense[1] is only available when the employer has made "a good faith effort to educate its employees about these policies and statutory prohibitions" and that "a plaintiff may still recover punitive damages if she demonstrates the employer failed to adequately address Title VII violations of which it was aware." Br. of Appellee/Cross-Appellant at 18, 19, quoting Cadena v. Pacesetter Corp., 224 F.3d 1203, 1210 (10th Cir. 2000) (citing Kolstad, 527 U.S. at 546).

But Ms. Renner did not introduce sufficient evidence that the company, as opposed to Harsco Corporation's managerial employees, failed to make good-faith efforts to comply with Title VII. Harsco Corporation submitted substantial evidence showing that the company established comprehensive polices and training procedures in an effort to comply with Title VII. In response, Ms. Renner alleges that her supervisors were not properly trained, but the only evidence she provides of that faulty training is the fact that her supervisors did not comply with the company's policies and procedures in various respects. If failure of supervisors to comply with company policy were sufficient evidence to prove the lack of a good-faith effort to train, the Kolstad defense would be effectively eliminated. As to the claim that the company was aware of her complaints and failed to take action, Ms. Renner's proof was limited to evidence about Mr. Bomlitz, the company's Director of Human Resources. While she expressed the view that Mr.

---

[1]This Court has not yet decided whether this so-called "defense" "represents an affirmative defense on which the defendant bears the burden of proof or whether the plaintiff must disprove the defendant's good faith compliance with Title VII." Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1209 (10th Cir. 2002) (quotations omitted).

Bomlitz was arrogant and never contacted her about the company's investigation, and while he spoke hypothetically at trial about Ms. Renner using a different bathroom to avoid her harassers, these facts do not arguably prove a legally sufficient claim. See Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1241 (10th Cir. 2001) (setting forth the sufficiency standard). A "scintilla of evidence" is not sufficient to satisfy this standard. See Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. 1988).

In addition, quoting our decision in Deters v. Equifax Credit Information Services, Inc., 202 F.3d 1262, 1270 (10th Cir. 2000), Ms. Renner argues that "employer malice or reckless indifference in failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew or should have known is premised on direct liability, not derivative liability, according to the doctrine of respondeat superior." Reply Br. of Appellee/Cross-Appellant at 2. Consequently, Ms. Renner argues, the good-faith defense does not apply in the instant case because Kolstad's holding was limited to punitive damages awards based on vicarious liability.

We decline, however, to consider Ms. Renner's untimely argument on this claim of error. We have noted that a federal appellate court will generally not consider issues not passed upon below. Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 720 (10th Cir. 1993) (citing Singleton v. Wulff, 428 U.S. 106 (1976)). Moreover, a party waives those arguments that its opening brief inadequately addresses. Adler, 144 F.3d at 679. To be sure, this court is not bound by the parties' stipulations regarding questions of law, and we have created limited exceptions to our general waiver rules. United States v. Furman,

112 F.3d 435, 438 n.2 (10th Cir. 1997). <u>See, e.g.</u>, <u>Lyons</u>, 994 F.2d. at 720-21 (collecting cases discussing some exceptions).

But this case does not fall within such exceptions. Ms. Renner did not object to a jury instruction on the <u>Kolstad</u> defense and never asserted that the <u>Kolstad</u> defense is inapposite because this is not a case of vicarious liability until her reply brief on appeal. <u>See</u> Reply Br. of Appellee/Cross-Appellant at 1. During this litigation, each party has operated under the assumption that the defendant could raise the <u>Kolstad</u> defense, including in the evidentiary presentations at trial. Invoking our discretion to decide this issue would deprive Harsco Corporation of a fair opportunity to respond and would exact the injustice that our general rule seeks to avoid. We have not been presented with special circumstances that justify countenancing such a result.

The district court correctly held that the paucity of the evidence concerning the company's actions does not, as a matter of law, reasonably support a finding that the company should be subject to punitive damages. Accordingly, we uphold the district court's order vacating the punitive damages award.

### C. Evidence of Fraud

We review the district court's evidentiary ruling concerning the evidence of fraud for an abuse of discretion. <u>Cartier v. Jackson</u>, 59 F.3d 1046, 1048 (10th Cir. 1995). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." <u>Id.</u>

Fed. R. Evid. 608(b) concerns evidence about a witness' specific instances of conduct:

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

This rule explicitly gives the district court discretion to exclude evidence if it is not probative of truthfulness or untruthfulness. The admission of such evidence is also limited by Fed. R. Evid. 403, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The evidence at issue here is a document that Ms. Renner signed and submitted in her bankruptcy proceeding. Harsco Corporation argues that it should have been able to cross-examine her about this document because she signed it even though it contained a false statement—that the proceeds from this lawsuit were exempt from her bankruptcy creditors. Ms. Renner rejoins that the bankruptcy court and trustee are the ultimate arbiters on whether the proceeds were exempt from her bankruptcy.

It is clear from this conflict that the parties could have created a virtual mini-trial over whether Ms. Renner made a false statement in connection with her

bankruptcy proceeding. Moreover, the sole point Harsco Corporation sought to prove by introducing the form is that Ms. Renner has signed forms without verifying that their content is accurate. But Ms. Renner admitted this precise fact in her testimony. The district court properly exercised its discretion to avoid a mini-trial over a collateral issue that the plaintiff already conceded. We therefore find no error in the district court's ruling to exclude the evidence.

### D. Attorney Fees

Ms. Renner's opening brief before us makes a request for appellate attorney fees. Title VII allows courts to award attorney fees: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." 42 U.S.C. § 2000e-5(k). We have discretion to award attorney fees when we deem it appropriate, but a prevailing party is not automatically entitled to an award of attorney fees. Cooper, 836 F.2d at 1557; Hoyt v. Robson Cos., Inc., 11 F.3d 983, 985 (10th Cir. 1993).

Such an award is appropriate in this case. Ms. Renner successfully defended her recovery against Harsco Corporation's appeal and, consequently, vindicated her federally protected rights. We therefore remand to the district court to determine reasonable attorney fees for the services Ms. Renner received in responding to Harsco Corporation's appeal.

Accordingly the district court's judgment is **AFFIRMED**. We **REMAND**

-20-

for the district court to determine reasonable attorney fees for the services Ms.

Renner received in responding to Harsco Corporation's appeal.