**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARCIA L. JACKSON,

      Plaintiff - Appellant,

v.

PARK PLACE CONDOMINIUMS
ASSOCIATION, INC.,

      Defendant - Appellee.

No. 15-3067
(D.C. No. 2:13-CV-02626-CM)
(D. Kansas)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Marcia L. Jackson, proceeding pro se,[1] filed suit against defendant Park Place

Condominiums Association, Inc. (Park Place), seeking damages for alleged violations

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] As Ms. Jackson is proceeding pro se, we construe her pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by an attorney.

of her civil rights. Specifically, Ms. Jackson claims that Park Place discriminated against her on the basis of her race during her tenancy in one of its condominium units. The district court granted summary judgment in favor of Park Place and, for the reasons that follow, we affirm.

## I.    BACKGROUND

Ms. Jackson is an African-American woman who moved into the Park Place Condominiums in May of 2011. Ms. Jackson did not own a unit, but instead rented a condominium from Jake Hurley from April 2011 to February 2012. The condominium complex is governed by a Home Owners' Association (HOA).

During Ms. Jackson's tenancy at Park Place, there were a number of disputes between Ms. Jackson and some of her neighbors about the noise coming from her unit. One of her neighbors, Marcia Grazia Serra, lived directly below Ms. Jackson. Ms. Grazia Serra filed a lawsuit against Ms. Jackson in the District Court of Johnson County, Kansas, that resulted in a default judgement stating, Ms. Jackson "regularly and intentionally engaged in or permitted offensive, improper and/or unlawful activities with substantial certainty that such activities will interfere with [Ms. Grazia Serra's] use and enjoyment of her property."

The HOA had no involvement in the lawsuit. And although HOA representatives attempted to mediate the noise disputes between Ms. Jackson and her neighbors, the HOA did not fine or reprimand Ms. Jackson for the noise coming from

---

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). We do not, however, construct arguments or otherwise advocate on her behalf. *Id.*

her unit. Ms. Jackson never attended an HOA meeting or presented the HOA with a written grievance.

Ms. Jackson has now filed a lawsuit claiming that Park Place and members of its HOA Board of Directors (Board) illegally discriminated against her on the basis of her race. Park Place moved for summary judgment, arguing that Ms. Jackson could not produce sufficient evidence to persuade a jury that it discriminated against Ms. Jackson because of her race.

In opposition to summary judgment, Ms. Jackson submitted her own testimony through an affidavit and two declarations, provided a police report of an incident at the condominium, produced statements from her friend, Garla Williams, and her daughters, Jaquita and Kedra Jackson,[2] and presented some documents related to her alleged damages.

Ms. Jackson's affidavit highlighted a handful of incidents she claimed illustrated discriminatory activity and made general allegations that the HOA had harassed her. Specifically, she claims that (1) it took three months for her name to be placed on her mailbox, and shortly after it was placed there an unidentified actor took her name plate down and placed it on the ground nearby; (2) it took more than three months for her name to be displayed on the outside marquee of the building; (3) unidentified Board members accused Ms. Jackson of playing "loud black music,"

---

[2] In a case involving multiple individuals with the same last name, we would ordinarily use first names or initials for ease of identification. *See, e.g.*, *United States v. Hill*, 786 F.3d 1254, 1257 n.1 (10th Cir. 2015). Because we rarely refer to Jaquita Jackson and Kedra Jackson, we instead refer to the plaintiff as Ms. Jackson and use full names when referring to her daughters.

turning her TV volume up too high, speaking too loudly, flushing her toilet too often, and making too much noise walking around the condominium; (4) her car was vandalized; and (5) her landlord asked her to move out at the HOA's request. In one of her declarations, Ms. Jackson stated that her landlord, Mr. Hurley, believed that these incidents occurred because of her race. Ms. Jackson also declared that she informed Marcia Cooper, a Board member, about the problem with her mailbox. The statements provided by Ms. Williams and both of Ms. Jackson's daughters repeated these allegations.[3]

At some point during her tenancy at Park Place, Ms. Jackson had contacted the police and complained that she was a victim of harassment and a hate crime. The police report she produced to oppose summary judgment contained the officer's notes about statements made by Ms. Jackson during the officer's investigation of Ms. Jackson's complaint. Ms. Jackson's statements reiterated the allegations she later included in her affidavit.

The district court granted summary judgment to Park Place. It held that Ms. Jackson had not presented any direct evidence of housing discrimination and that she had failed to present enough evidence to make out a prima facie case of hostile housing environment, as required by either 42 U.S.C. §§ 1981, 1982, or the Fair Housing Act, 42 U.S.C. § 3604(h).

---

[3] Kedra Jackson also claimed that hallway lights were turned off when her mother moved into the apartment. Ms. Jackson dropped her claims about this incident by the time of the Pretrial Order. As it was not addressed by the district court and Ms. Jackson has not referenced this incident on appeal, we do not consider it further.

Ms. Jackson filed a "Motion to Alter and Amend Summary Judgment" after the district court granted summary judgment in favor of Park Place. Park Place did not timely respond, and the district court issued an order to show cause why Park Place had failed to file a response to the motion. Counsel for Park Place explained that the failure was due to an error with the court's electronic filing system but that a timely response had been mailed to Ms. Jackson. The district court exercised its discretion to consider Park Place's response.

Ms. Jackson now appeals.

## II.    DISCUSSION

"We review de novo a district court's grant of summary judgment, applying the same legal standard as applies in the district court." *Emcasco Ins. Co. v. CE Design, Ltd.*, 784 F.3d 1371, 1378 (10th Cir. 2015). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a summary judgment ruling, we must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Reinhart v. Lincoln Cty.*, 482 F.3d 1225, 1229 (10th Cir. 2007) (internal quotation marks omitted). To the extent that a nonmoving party offers affidavits to oppose summary judgment, "[a]ffidavits must contain certain indicia of reliability." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings . . . [they] must be based on more than mere speculation, conjecture, or

5

surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).

Ms. Jackson does not identify the federal statute she relies on to pursue her housing discrimination claim. Therefore, like the district court, we assume she bases her claim on either 42 U.S.C. § 1981, which prohibits racial discrimination in the making, performance, modification, and termination of contracts, *see Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001), 42 U.S.C. § 1982, which prohibits racial discrimination in the sale and rental of property, or 42 U.S.C. § 3604(b) of the Fair Housing Act (FHA), which prohibits discrimination against any person "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of race, color, religion, sex, familial status, or national origin."

Ms. Jackson argues that Park Place created a hostile housing environment. When analyzing claims of hostile housing environment, we have looked to decisions addressing hostile work environment claims for guidance. *Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989). To make out a hostile work environment case, a plaintiff must prove (1) she is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on her membership in the protected class, and (4) the harassment was so severe, pervasive, or abusive that it altered the conditions of employment. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). "Applied to housing, a claim is actionable when the offensive behavior unreasonably interferes with use and enjoyment of the premises." *Honce v.*

6

*Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993). Trivial or isolated manifestations of a discriminatory environment are not actionable. *Id.* (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986) (hostile work environment); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir. 1987) (hostile work environment)). Rather, harassing conduct must be severe or pervasive. *Id.*

Although as an African-American, Ms. Jackson is a member of a protected group, she cannot establish that she suffered harassment because of her membership in that group. She has not claimed that Park Place or any of its Board members used any ethnic or racial slurs against or around her, or that any of the alleged harassment directly referenced her race. While she claims that an unidentified HOA member accused her of playing "loud black music," we agree with the district court that there is nothing in the record indicating that her neighbors and the HOA's concerns related to the type of music she played. Rather, Ms. Grazia Serra's lawsuit complained of the volume and the time of day Ms. Jackson played the music.

The only other direct evidence of racial discrimination Ms. Jackson offers is her allegation that her landlord, Mr. Hurley—who is not an HOA Board member— believed her problems at the condominium were because of her race. But even if Mr. Hurley's opinion could support her claim, Ms. Jackson did not offer Mr. Hurley's sworn statement. Instead, she provided her own declaration purporting to convey his opinion about the motives of third parties. This is inadmissible hearsay and cannot be used to defeat summary judgment. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1208–10 (10th Cir. 2010) (holding that a plaintiff failed to make out a

Title VII claim of sex discrimination on the basis of direct evidence because the evidence was inadmissible hearsay); *Wright-Simmons v. City of Okla.*, 155 F.3d 1264, 1268 (10th Cir. 1998) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment."). Similarly, Ms. Jackson's statements contained in the police report constitute inadmissible hearsay that cannot be used to defeat summary judgment.[4] *See United States v. Caraway*, 534 F.3d 1290, 1295 (10th Cir. 2008) ("Ordinarily a prior statement by a testifying witness cannot be used at trial. If offered for the truth of the matter asserted, it is inadmissible hearsay unless" an exception to the hearsay rule applies.).

Even assuming Ms. Jackson could show that Park Place's conduct was motivated by race, she cannot show the harassment altered the conditions of her housing by unreasonably interfering with her use and enjoyment of the premises. Whether an environment is illegally hostile or abusive "can be determined only by looking at all the circumstances, and factors may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the use and enjoyment of the premises]." *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996). Ms. Jackson has identified five incidents of unwelcome conduct: (1) it took three months for her name to be placed on her mailbox; (2) her

---

[4] Nothing in the police report indicates that the officer spoke with anyone other than Ms. Jackson or that the officer otherwise investigated Ms. Jackson's harassment allegations.

name plate was ripped off her mailbox shortly thereafter; (3) it took three months for her name to be placed on the outside marquee of the building; (4) the "Deville" decal on her Cadillac was stolen; and (5) Ms. Grazia Serra complained about noise coming from Ms. Jackson's unit.[5]

We agree with the district court that these facts do not rise to the level of unlawful harassment. While there may have been a delay in placing Ms. Jackson's name on her mailbox and on the marquee, Ms. Jackson has offered no evidence that the HOA's delay in her case was any longer than it was for other residents, that the HOA delayed because of her race, that a three-month delay is unreasonable, or even that her lease with Mr. Hurley and his arrangement with the HOA made it responsible for placing her name in these locations. Nor do the noise complaints demonstrate harassment. According to the lawsuit, Ms. Jackson unreasonably interfered with Ms. Grazia Serra's use and enjoyment of her property. Restricting Ms. Jackson to lawful noise levels does not unreasonably alter the conditions of her housing.

Ms. Jackson also claims the removal of her nameplate and the theft of the "Deville" decal from her car constitute direct incidents of harassment. Yet she offers no evidence of when or where the decal was stolen or how or why the nameplate was removed. Even assuming this conduct was racially motivated, she has failed to show

---

[5] While Ms. Jackson also alleges that Mr. Hurley asked her to move out at the HOA's request, Ms. Jackson has again failed to offer admissible evidence of this fact. Ms. Jackson's testimony about what Mr. Hurley told her is inadmissible hearsay and cannot be considered at summary judgment. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1208–10 (10th Cir. 2010); *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998).

9

that the HOA was responsible for it. Moreover, these isolated and relatively minor incidents over months of time are insufficient to establish a hostile housing environment. *See Morris v. City of Colo. Springs*, 666 F.3d 654, 665–69 (10th Cir. 2012) (holding three isolated incidents combined with allegations that a supervisor yelled at the plaintiff about the quality of her work, without context for the comments, did not establish a hostile work environment); *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1262–63 (10th Cir. 1998) (holding that summary judgment in favor of the defendant was properly granted on a hostile work environment claim where a plaintiff complained of isolated incidents that occurred over a four-year period, most of which did not occur because of her sex); *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 648–49 (7th Cir. 2011) (holding three isolated incidents that were not "extremely serious" did not support a hostile work environment claim). For these reasons, the district court properly granted summary judgment to Park Place.

Last, Ms. Jackson takes issue with the district court's consideration of Park Place's response to her Motion to Alter and Amend Summary Judgment. It is unclear whether she is arguing that the district court's favorable ruling displayed judicial bias towards Park Place or that the district court exceeded its discretion in considering the late response. We reject both arguments. "Adverse rulings alone do not demonstrate judicial bias." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). And district courts are entitled to a great deal of discretion in deciding whether to consider untimely motions. *See Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1288

(10th Cir. 2002). The district court did not exceed its discretion in considering the untimely response here, particularly because Park Place's delay was caused by procedural irregularities with the court's electronic filing process.

### III.   CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court granting Park Place summary judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge